# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ted Lester Coit, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No.: 2:09-CV-0157-PMD |
| v. | ) |
| | ) |
| Bryan Zachary, Fort Mill Police | ) **ORDER** |
| Department; Robert T. Hill, Fort | ) |
| Mill Police Department, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the court on Plaintiff Ted Lester Coit's ("Plaintiff") *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983. On June 25, 2009, Defendants Bryan Zachary ("Zachary") and Robert T. Hill ("Hill") (collectively "Defendants") filed a motion for summary judgment, and on October 5, 2009, Plaintiff Ted Lester Coit ("Plaintiff" or "Coit") filed his memorandum in opposition to summary judgment. On October 13, 2009, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, the Magistrate Judge entered a Report and Recommendation ("R&R") recommending that Defendants' motion for summary judgment on Plaintiff's § 1983 claims be granted and that the court decline to exercise supplemental jurisdiction over any remaining state law claims. Petitioner filed objections to the R&R on or about October 22, 2009. Having reviewed the entire record, including Plaintiff's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## BACKGROUND

On January 21, 2009, Plaintiff filed a verified complaint, which must be taken as true for summary judgment purposes, alleging the following under the "Statement of Claim" section of the complaint:

> On July 19, 2006, I was arrested by the Fort Mill Police Department, at the residence of 101 Steele St. The warrants for my arrest was [sic] executed by York County S.W.A.T. Team, S.L.E.D. and Fort Mill Police Department. I was charged with the following charges: 1) assault with intent to kill, 2) assault with an high aggravated nature, 3) assault with an high aggravated nature, 4) pointing and presenting a firearm at a person, 5) possession of a stolen firearm, and 6) grand larceny . . . For the next several days my name was slandered throughout the media, news coverage and newspaper. I ended up losing my job at the Charlotte Knights baseball stadium. I went to trial on October 29th 2007, in which since arrest I was detained at the Moss Justice Center of York County. The presiding Judge dismissed the possession of stolen firearm, and on October 31st 2007 I was founded [sic] "Not Guilty" by a jury of my peers. Once release[d] I was homeless and unable to gain employment because of the prejudiced pretrial publicity related to my case, due to me being falsely accused of crimes that I didn't commit . . .

Plaintiff asks the court to grant him the following relief: "1) expunged [sic] said charges from my record 2) grant me civil damages of the following amount: a) $50,000 – for lost work wages – Fort Mill Police Dept. b) $1,000,000 – for pain and suffering – Fort Mill Police Dept c) $50,000 – for wrongful imprisonment – Fort Mill Police Dept. d) $50,000 – for cruel and unusual punishment – Fort Mill Police Dept e) $1,000,000 – for assassination of character due to cruel media coverage . . . also I want a public apology from the Fort Mill Police Department and Captain Bryan Zachary and Det. Robert T. Hill."

Additional evidence in the record reveals the following facts. On July 14, 2006, members of the Fort Mill Police Department responded to a resident's phone call reporting an attempted robbery, aggravated assault, and damage to property at two neighboring addresses in

the Town of Fort Mill, South Carolina. On July 14, 2006, eye witnesses described the incident as follows:

> (Tim Murphy) At approximately 5:55 am this morning I was sitting in my living room when I heard the blinds rattle lightly on the door leading to the deck. The blinds were closed. I heard the light rattle a second time a few seconds later so I went to the door to open the blinds. The door is a double door leading to the deck. I opened the blinds very quickly and saw a dark image close to the door. Then I heard a voice and realized the image was a man. I said "excuse me." He then replied "Open the door." At that point I saw the end of the barrel of a hand gun pointed at my face. I immediately turned and ran into the kitchen where I picked up the phone and called 911. After I got into the kitchen I heard a loud shot. I told the police on the phone what had happened and that I just heard a shot. The police arrive a few minutes later.
> . . .
>
> (Kelly Wyndham) I was downstairs in my living room watching a TV Show . . . I was sitting in a chair next to the windows and it was about 5:50 or so when I heard a really loud knock. At first I thought something fell upstairs, but then I realized it was coming from the window behind me. I turned around and saw a black man at the window with a bandanna or something covering his mouth and a gun pointed at me. He was about average height I think, and I assume he was wearing dark clothes because I don't remember any white or bright colors. I think his hair was probably short because I don't remember anything especially different about it, but I'm not sure because I was mostly looking at the gun . . . At first I didn't scream but sat with my hands covering my mouth. He motioned for me to open the door that was next to the windows and I started to scream but I didn't move. He kept the gun pointed at me and put his finger over his mouth to tell me to be quiet and kept telling me to open the door. I kept screaming and heard my parents start to run downstairs. By the time I saw my parents on the stairs, I looked out the window and saw that he had left, but didn't see him leave or which way he ran.

On July 19, 2006, an informant, Ramell Watts ("Watts"), contacted Defendant Hill concerning the above incidents. Watts reported that the Plaintiff had spoken to him about the incidents and had admitted to committing the crimes. Watts gave a sworn statement to Hill stating that Plaintiff had told Watts that "he was trying to kick the door down and when he finally done it the man was in the living room and ran in the kitchen once he shot at him" and that the Plaintiff had said that the girl "was sitting down on the couch and he could see her throw

3

[sic] the window so he tapped once lightly but she didn't her [sic] it but he said she act like the [sic] didn't hear him so he tapped again this time she looked out the corner eye and once she stood up and that when Ted pointed the gun at her and told her to open the . . . door several times after she didn't do it he took running." The information about the incident that Watts provided in his sworn statement was not available to the general public. Additionally, Hill had known Watts for ten years, and Watts had provided reliable information in past investigations.

On July 19, 2006, Hill obtained an arrest warrant for the Plaintiff from a Municipal Court Judge, and the Judge reviewed Hill's affidavit based upon the information from Watts and corroborating evidence from the investigation.

Defendant Zachary swore an affidavit in support of the application for a search warrant for the Plaintiff's grandmother's residence for handguns or gloves that could link Plaintiff to the incidents. Due to Plaintiff's prior contact with the Police Department, Zachary believed that Plaintiff was residing at his grandmother's residence. Pursuant to the issued warrants, the Plaintiff was arrested on July 19, 2006. The grandmother's residence was searched and two handguns and gloves were found.

Plaintiff was held at the Moss Justice Center in York County, South Carolina, without bond pending trial. On October 31, 2007, Plaintiff was tried on various charges stemming from the July 14, 2006 incidents including assault with intent to kill, assault of a high and aggravated nature, pointing and presenting a firearm at a person, possession of a firearm, and grand larceny. Watts, the informant who provided the sworn statement implicating the Plaintiff in the crime, refused to testify at trial. A jury found the plaintiff not guilty on all charges. The charge for possession of a stolen firearm was dismissed by the trial judge. The Plaintiff was then released from the detention center.

On or about January 18, 2009, Plaintiff commenced this action. On June 25, 2009, Defendants filed a motion for summary judgment, and on October 5, 2009, Plaintiff filed his memorandum in opposition to summary judgment. On October 13, 2009, the Magistrate Judge entered an R&R recommending that the court grant Defendants' motion for summary judgment on Plaintiff's § 1983 claim and decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff filed objections to the R&R on or about October 22, 2009

**STANDARD OF REVIEW**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report.

28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.*

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow for the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir.1990).

## **ANALYSIS**

The Magistrate Judge recommended that the court grant Defendants' motion for summary judgment as to the Plaintiff's federal causes of action and decline to exercise jurisdiction over any remaining state law causes of action. The Magistrate Judge found that Plaintiff is essentially claiming that the Defendants wrongfully arrested and prosecuted him for crimes that he did not commit and that such claims are founded on the Fourth Amendment's protection against unreasonable seizures. *See Gantt v. Whitaker*, 57 Fed. Appx. 141 (4th Cir. 2003). The Magistrate Judge then found that based on the totality of the circumstances including Watts's sworn statement, the corroborating statements of the eye witnesses, and Watts's history of providing reliable information to Hill, that the Defendants possessed the probable cause necessary to seek and obtain search and arrest warrants for Plaintiff. The Magistrate Judge also

6

found that to the extent Plaintiff claims that Defendants subjected him to cruel and unusual punishment based on his detention at the Moss Justice Center pending his criminal trial, this claim fails as it is uncontested that Defendants are not employees of the Moss Justice Center and had no authority over the Plaintiff or over his conditions of confinement. The Magistrate Judge also found that Defendants are entitled to qualified immunity since Plaintiff has failed to show that Defendants violated any of his clearly established constitutional rights. Finally, the Magistrate Judge recommended that, assuming Plaintiff's § 1983 claims are dismissed, any additional claims for relief under South Carolina law ought to be dismissed for lack of subject matter jurisdiction.

In his objections, Plaintiff first provides corrections to the R&R's statements of the factual background of his case, and the court has incorporated those corrections into the background section of this order. Most of Plaintiff's other objections are centered on Plaintiff's allegations that the Defendants did not properly investigate the incident and instead relied upon informant Watts's statements. Plaintiff claims that Watts was not a reliable source and that Defendants have produced no evidence that Watts provided reliable information in the past. Plaintiff claims that Watts only began providing information to Defendants after being charged with trafficking of crack cocaine in 2006. Plaintiff also claims that Watts's sworn statement does not exactly match up with the eye witness statements. For example, Plaintiff points out that Watts claimed that Plaintiff admitted to trying to kick down one of the victim's door but that the victims' statements never mention the suspect kicking a door. Plaintiff also points out that Watts claimed that Plaintiff described the girl sitting on a couch when he tapped on her window and asked the girl to let him in and that when the girl saw him she stood up, but that the girl, Kelly Wyndham, never stated that she heard the suspect's voice or that she stood up after seeing the

suspect. Plaintiff also claims that even though Watts may have provided information that was not known by the general public, that information could have been leaked from the police to the public and that stories spread in a small town like Fort Mill.

Between his complaint, response to summary judgment, and objections to the R&R, it appears that Plaintiff's only constitutional claim is that Defendants violated his Fourth Amendment rights by searching and arresting him without probable cause. This claim, while similar to a malicious prosecution claim, must be founded on the Fourth Amendment when alleged pursuant to a § 1983 action. "Section 1983 'is not itself a source of substantive rights, but a method for vindicating *federal* rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.' Because § 1983 does not provide redress for violations of state law, we previously have made clear that 'there is no such thing as a § 1983 malicious prosecution claim. What we term a malicious prosecution claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action.'" *Gannt,* 57 Fed. Appx. at 146 (internal citations omitted).

In order to establish a § 1983 malicious prosecution claim, Plaintiff must establish (1) that he was arrested pursuant to a warrant not supported by probable cause and (2) that the criminal proceedings against him terminated in his favor. *Burrel v. Virginia,* 395 F.3d 508, 514 (4th Cir. 2005). The Plaintiff has met the second element of his claim by demonstrating that the criminal proceedings against him were terminated in his favor. The second element of the malicious prosecution claim is simply an inquiry as to whether the outcome of the prosecution was favorable to the plaintiff by virtue of a not-guilty verdict or otherwise. *DiBlasio v. City of*

*New York*, 102 F.3d 656, 657-658 (4th Cir. 1996). Here, it is undisputed that Plaintiff was found not guilty. Plaintiff, however, has failed to establish any genuine issue of material fact as to the absence of probable cause for the arrest and search warrants.

Probable cause exists when "facts and circumstances . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Porterfield v. Lott,* 156 F.3d 563, 568 (4th Cir. 1998). Probable cause requires more than "bare suspicion" but requires less than evidence necessary to convict. *Id.* "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id.* And when it is considered in the light of all the surrounding circumstances, even "seemingly innocent activity" may provide a basis for finding probable cause. *Id.* Probable cause can be founded on information received from an informant if, in view of the totality of the circumstances, the judicial officer is satisfied with the veracity and basis of knowledge of the informant. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983). An informant's reliability may be bolstered by "[t]he degree to which [the] informant's story is corroborated." *United States v. Hodge,* 354 F.3d 305, 309 (4th Cir.2004). Nonetheless, "'there is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible.'" *United States v. Perez,* 393 F.3d 457, 462 (4th Cir.2004)(citing *United States v. DeQuasie,* 373 F.3d 509, 518 (4th Cir.2004)). "The officer applying for the warrant 'need not entirely eliminate the risk that an informant is lying or in error.'" *Id.* (citing *United States v. Capozzi,* 347 F.3d 327, 333 (1st Cir.2003)). When relying on information from an informant in establishing probable cause, courts look for some indicia of reliability in the informant's account. *United States v. Baker,* 577 F.2d 1147, 1150 (4th Cir. 1978).

The court finds that, viewed in the totality of the circumstances, Defendants had probable cause to seek and obtain arrest and search warrants for Plaintiff. The court finds that Watts's sworn statement had some indicia of reliability in order to establish probable cause to search and arrest Plaintiff. Watts's sworn statement provided a description of the incident that closely matched both eye witness accounts. Watts's statement had specific information regarding the crimes that was not generally available to the public. While Plaintiff argues in his objections that this information could have been leaked to the public by the police, Plaintiff points to no evidence of a leak to support this claim. Additionally, Hill has provided a sworn statement indicating that Hill has known Watts for over ten years and that Watts had provided Hill with reliable information in past criminal investigations. Plaintiff argues that Defendants have not provided evidence other than Hill's affidavit showing that Watts has provided reliable information in the past; however, the court finds that even without evidence that Watts has provided reliable information in the past, the information provided by Watts has some indicia of reliability based on the corroborating accounts by eye witnesses alone. Watts also provided Hill with a sworn statement, as opposed to an anonymous tip. While the eye witnesses gave very limited physical descriptions of the suspect, the Plaintiff matched the limited physical descriptions provided by the eye witnesses. Accordingly, after a thorough review of the record and the totality of the circumstances surrounding the issuance of the warrants, the court concludes that it was reasonable for both the Defendants and the Municipal Court Judge to conclude that Watts's statement had some indicia of reliability. The court further concludes that the Municipal Court Judge's finding of probable cause was well-supported and that the warrants in this case were not constitutionally deficient. Thus, the court finds that Plaintiff has failed to establish any genuine issue that Defendants have violated his Constitutional rights.

The Magistrate Judge also concluded that Defendants in their individual capacity are entitled to qualified immunity because Plaintiff failed to show that Defendants violated any of his clearly established constitutional rights. The Plaintiff objects to the Magistrate's finding with respect to qualified immunity; however, because the court has decided above that Plaintiff has failed to establish a constitutional violation, it is unnecessary to discuss immunity in this Order.

To the extent that Plaintiff asserts any claims under South Carolina law, including a claim of defamation, any such claims are premised on supplemental jurisdiction. Because the court grants Defendants' motion for summary judgment on all of Plaintiff's claims for which it has original jurisdiction, the court also dismisses without prejudice any additional claims for relief under state law for refiling in state court. 28 U.S.C. § 1367(c)(4).

## **CONCLUSION**

For the foregoing reasons, the court adopts the Magistrate Judge's Report and Recommendation and **ORDERS** that Defendants' Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**January 25, 2010**
**Charleston, SC**

NOTICE OF APPEAL
Plaintiff is hereby notified that he has the right to appeal this Order within thirty (30) days from the date hereof pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

11